**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

*FOXRUN DEVELOPMENT CO. LLC., AND*
*NANCY GUTTENBERG*

|  |  |
|---|---|
| *Plaintiffs,* | Index No. |
| *- against -* | COMPLAINT |

*SHORE CHAN DEPUMPO, LLP.*
                              *Defendant.*

-------------------------------------------------------------x

*Plaintiff, Foxrun Development Co. LLC., for its Complaint against defendant, Shore Chan DePumpo, LLP.*

1.  Foxrun Development Co. LLC., ("Foxrun") is a cyber-security company incorporated in the state of New York, doing business from the address of 399 Hawley Road, North Salem, NY, 10560.

2.  Nancy Guttenberg resides at 399 Hawley Road, North Salem, NY 10560.

3.  Nancy Guttenberg is the President of Foxrun Development Co. LLC., which does business from 399 Hawley Road, North Salem, NY 10560.

4.  Shore Chan DePumpo, LLP., a patent law firm LLP, does business at 901 Main St #3300, Dallas, TX 75202.

## AND AS FOR A FIRST CAUSE OF ACTION

5.  Plaintiff re-alleges the allegations contained in paragraphs 1 through 4, with the same force and effect as if fully set forth herein.

6.  On September 29th 2017, Nancy Guttenberg ("Guttenberg") as the President of Foxrun Development Co. LLC. ("Foxrun") met with Dale White, General Counsel for the Saint Regis Tribe at the American Indian Pre-Law Center located in Albuquerque, New Mexico. The meeting had been arranged to discuss the Saint Regis Tribe's interest in two of Foxrun's cyber security patents which Foxrun refers to as Akiva and Hippo. Foxrun has also developed three other USB port locking devices using Flexall technology, and two USB dumb port blockers. Foxrun is currently working on new cutting edge smart locking mechanisms for USB ports. Foxrun had initially contacted Dale White in response to an article published in the New York Times ("How to Protect a Drug Patent? Give It to a Native American Tribe" by Katie Thomas, Sept. 8, 2017). According to the New York Times, the patents were transferred to the Saint Regis Tribe in order to invoke a Sovereign Immunity. Guttenberg is also the majority shareholder in Foxrun and a Native American. Specifically, a shareholder in Bristol Bay Native Corporation. Bristol Bay Native Corporation

is located in the State of Alaska and formed under the Alaska Native Claims Settlement Act. The State of Alaska has Native Corporations not Indian Reservations as in the lower 48 states. Because Bristol Bay Native Corporation does not have sovereign status, it cannot invoke a defense of sovereign immunity to any legal claim. Therefore, Guttenberg did not approach Bristol Bay Native Corporation to help her resolve the IPR challenge to Foxrun's, patent Akiva. At the initial meeting with Dale White, the possibility of manufacturing the two patents that Foxrun invented and owns was discussed. Dale White also explained that the Saint Regis Tribe was being subjected to a great deal of media criticism for their deal with Allergen. Guttenberg was led to believe that the Saint Regis Tribe is not involved in the invention, manufacturing, distribution, or marketing of any pharmaceutical drugs. In response to Dale White's inquiry as to whether Foxrun's patents could be manufactured in Upstate New York on the Reservation, Guttenberg responded that it could be possible to have members of the Tribe assemble component parts that were manufactured elsewhere. Moreover, that it would be possible to create and attach marketing materials to the items prior to distribution for sale. At the conclusion of the meeting, Dale White stated to Guttenberg that Foxrun's patents might present an economic opportunity for the Tribe to actually engage in some kind of manufacturing that would help the Reservation's economy. Subsequent to this initial meeting, Dale White arranged for a follow-up meeting, scheduled for October 4th in Dallas, Texas at the TX patent law firm, Shore Chan DePumpo, LLP. Russ Barr, a member of the Tribe's lawyer was to attend. On behalf of Foxrun, Guttenberg traveled to Dallas. Prior to meeting with the Saint Regis Tribe's legal counsel Russ Barr and Shore Chan DePumpo, LLP, Guttenberg met with investment banker Mark Chapmen who is from Dallas and has worked on Foxrun as an advisor for over a year. Also in attendance was a businessman from the Dallas area that Guttenberg has worked with for over 20 years named George Moussa. This meeting took place at the Circle Crescent Hotel lobby at 10 a.m. Oct. 4th. There Guttenberg gave a demonstration of Foxrun's prototype for its patent Hippo. The intent of the demonstration of the prototype was to raise venture capital. Upon concluding her meeting, Guttenberg took the Crescent Hotel's inhouse limo directly to the offices of Shore Chan DePumpo, LLP. Upon arriving at the offices of the law firm, Guttenberg met patent attorney for the Tribe, Chris Evans. Guttenberg also met Brian Small, a business consultant who, she was told, was representing the Saint Regis Tribe. The legal counsel for the Tribe, Russ Barr, was very late for the appointed 11o clock meeting. At Chris Evans' suggestion, Evans, Guttenberg and Small agreed to go to lunch while waiting for Russ Barr to arrive. After ordering at the restaurant, Chris Evans, Brian Small, and Guttenberg sat down at a table to wait for their order. At that point in time, Guttenberg took the prototype of Hippo from her purse to demonstrate it to Chris Evans and Brian Small. Both Chris Evans and Brian Small looked at the prototype where upon Chris Evans through negligence broke it. The prototype fell to pieces on the table.  Guttenberg picked up the pieces and returned them to their plastic case then to her purse. After finishing lunch, Chris Evans, Brian Small, and Guttenberg, returned to the offices of

Shore Chan DePumpo, LLP. Discussions began on how Foxrun could help the Saint Regis Tribe. Presentation of manufacturing proposals made by Helbling (high tech manufacturing firm) were presented together with the technical qualifications of the individuals making up Foxrun's development team. Phone conversations were held with both Gabriel Faifman an expert in programming and David Csokasy also an expert in programming. Faifman's expertise is in industrial application and Csokasy's expertise is in the nuclear industry. It was further explained that Foxrun had been working closely with Jeff Brown, the founder of Dynaloy LLC, an inventor of Flexall. Guttenberg gave the broken prototype to Brian Small who she believed at the time to be a representative of the Saint Regis Tribe. She also gave him the proposal that Helbling had prepared for the development of both Akiva and Hippo together with Foxrun's marketing material on Akiva and Hippo. Throughout the meeting, Guttenberg was repeatedly assured by Chris Evans that Foxrun's IPR would be dealt with by his firm in the event an agreement was reached with the Saint Regis Tribe to transfer Foxrun's patents and manufacture. Chris Evans forwarded Guttenberg a copy of the memorandum of law supporting the Motion to Dismiss filed by his firm on behalf of the Saint Regis Tribe detailing their argument for dismissal based upon Sovereign Immunity. Upon review of the memorandum, Foxrun had serious reservations about doing business with the Saint Regis Tribe. Guttenberg then began emailing Chris Evans regarding the replacement or payment for the broken prototype and for the return of all contract and marketing material.

7. Guttenberg on behalf of Foxrun has made repeated verbal and written demands for the replacement or fair market value of the broken prototype.

8. Shore Chan DePumpo, LLP has made no offer for the replacement or fair market value of the broken prototype despite being invoiced.

9. Based upon Shore Chan DePumpo, LLP.'s destruction of Foxrun's only prototype with a fair market value of $400,000, Foxrun hereby demands damages in that amount combined with interest, costs, and attorney fees.

## AND AS FOR A SECOND CAUSE OF ACTION

10. Plaintiff re-alleges the allegations contained in paragraphs 1 through 4, and 6 through 8

11. On October 23rd 2017, Guttenberg called patent attorney Chris Evans demanding return of the broken prototype and replacement or compensation for the damage he caused by breaking it. During Guttenberg's telephone conversation with Chris Evans on October 23rd, Chris Evans stated that Brian Small was not under contract with the Saint Regis Tribe but under a current contract with his law firm. He went on to state that the prototype was a gift given to his law firm. Guttenberg stated that she found that to be not only fantastical but impossible. Chris Evans went on to state that the prototype was not worth the $400,000

stated on the invoice, further he said he could repair the device himself. Guttenberg then explained to Chris Evans why his claim was nonsensical, first, the device utilizes complex NASA technology, something Chis Evans is not familiar with.  Second, Guttenberg also explained that the device uses Flexall, which is about the diameter of a human hair, for the first time in a cyber security device, again something Chris Evans is not familiar with.  Third, Guttenberg also stated that Jeff Brown, the inventor of Flexall has advised Foxrun on its prototype's use of his invention, also something Chris Evans is not familiar with. Foxrun and the corporation it preceded Portal Locks have made innovative use of the Flexall and this is the first application that is used in a cyber security device. After listening to Chris Evans excuses justifying his inability to replace or pay for the broken prototype, Guttenberg asked for the name of the managing partner of Shore Chan DePumpo, LLP. Chris Evans gave Guttenberg Shore's telephone number, then angrily hung up on her.  Guttenberg, thereafter called Shore demanding replacement or payment of the prototype. In rapid succession, Shore made the following statements to Guttenberg. First, he said the prototype was not valuable. Second, Shore then stated that Foxrun must have more than one prototype and that it was unprofessional to have only one. Guttenberg's response was that the development of the prototype cost $400,000 explaining that it was a very expensive prototype to develop because of the use of the new technology, Flexall. Third, Shore stated that the design of the prototype must have been of inferior quality, if it was so easily broken by handling.  Guttenberg in response, pointed out that over the last year and a half, the device had been handled many times and used in numerous presentations to raise venture capital and was never harmed or damaged. Fourth, Shore stated that the device must have been broken prior to Guttenberg's attending the meeting. Guttenberg stated that ten minutes prior to attending the meeting with the Saint Regis Tribe, at Shore Chan DePumpo, LLP., and meeting Chris Evans and Brian Small, she had met with an investment banker and potential investor at the Crescent Circle Hotel, four blocks away from the law offices.  At that meeting she gave a presentation of the device which clearly was in good working order.  At that point, Shore began yelling that Guttenberg was insane, and must be a drug addict. He then hung up.

12. The phone conversation was witnessed by Nicholas Guttenberg, wherein Shore stated, and it is quoted herein the following "**that Guttenberg was insane, and must be a drug addict.**" Shore then hung up.

13. The statement, "**that Guttenberg was insane, and must be a drug addict.**" as published is slander per se damaging the reputation and good name of Foxrun.

14. Shore has slandered Guttenberg causing Foxrun immediate and irreparable damage to its good name and reputation.

15. Based upon Shore's slanderous statement, Foxrun demands damages in the amount of $1,000,000.00.

## AND AS FOR A THIRD CAUSE OF ACTION

16. Plaintiff re-alleges the allegations contained in paragraphs 1 through 4, 6 through 8, and 10 through 14 with the same force and effect as if fully set forth herein.

17. Guttenberg, immediately called back believing that Shore might have regained control of his anger and emotions. Shore's assistant answered the phone, but did not identify herself to Guttenberg. Shore's assistant did not connect Guttenberg to Shore, and therefore Guttenberg asked her to relay a message. Guttenberg's message was that Foxrun had absolutely no interest in doing business with the Saint Regis Tribe in that it was grossly apparent that the Tribe did not have the technical expertise required to manufacture either or both of Foxrun's patented cyber security devices. Specifically, the Saint Regis Tribe did not have qualified mechanical engineers, electronical engineers, physicists, mathematicians, or programmers, who would be required for manufacture of the devices. Moreover, Foxrun and the team of engineer programmers that comprised Foxrun did not agree at all with the corporate structuring that patents could be transferred merely to support the Saint Regis Tribe's ongoing patent litigation with the pharmaceutical company, Allergan. Guttenberg went on to explain that she was communicating with State Senator offices of McCaskill of Montana, Senator Tom Udall from New Mexico, Senator Martin Heinreich of New Mexico, regarding the use of a Tribe's sovereign immunity as a defense in a IPR proceeding. Foxrun had no interest in providing the Saint Regis Tribe with manufacturing to counter a legal argument that represents only the interest of the Saint Regis Tribe, and not all Native American Tribes. As a Native American and member of Bristol Bay Native Corporation, and as an inventor of cyber security devices, Guttenberg does not agree with the application of sovereign immunity to defeat an IPR action. At no time during Guttenberg's conversations with Shore's assistant, did she make any threats besides stating that Foxrun was not interested in doing business with the Saint Regis Tribe or having Shore Chan DePumpo, LLP. represent Foxrun in any legal matters. Indeed, Guttenberg reiterated that the only issue was the replacement or payment for the cyber security prototype that partner Chris Evans negligently broke. While this conversation Was taking place with Shore's assistant, Chris Evans was emailing Guttenberg, asking what gauge Flexall was required to repair the prototype, and whether the Flexall was crimped. This was Chris Evans' attempt to repair the damaged prototype. Guttenberg's statement to the assistant was that Chris Evans had no right or attempt to repair the damage prototype in that he was requesting proprietary information about it. Giving no response of either statements or questions, Shore's assistant abruptly hung up on Guttenberg. The assistant then concocted a series of misrepresentations and lies in order to defame, disparage and threaten Guttenberg. In response to the phone conversation, Shore, published to all of the partners in his firm an email letter, containing disparaging and defaming statements about Guttenberg, President of Foxrun.

18.   Shore published the following disparaging and defaming statement in his email to Guttenberg and his partners "**My executive assistant Caroline Johnson has reported your threatening phone call to my office in which you implied that you "knew people in Israel" who you could enlist to do physical harm to me and my partners".**

19.   Shore intentionally misstates and mischaracterizes the telephone conversation that Guttenberg had with his assistant. Guttenberg specifically stated that a member of her Group, Gabriel Faifman is Jewish, was raised religiously, and supports and advocates for the indigenous people of Israel, the Jews. Gabriel Faifman actively participates in political movements to combat antisemitism in British Columbia. He works with likeminded individuals who also represent the indigenous peoples of Canada who are natives of Canada. Guttenberg explained to Shore's assistant that none of the members of Foxrun agree with the use of sovereign immunity as a defense for big business. Guttenberg explained that Foxrun did not see any economic substance to the transfer of patents to the Saint Regis Tribe, in that Foxrun believed that the technical expertise for the development, manufacturing, distribution, and sales of their cyber security devices does not exist on the Saint Regis reservation in that there was an absence of mechanical engineers, electrical engineers, physicists, mathematicians, programmers, and scientists in general. Individuals with this kind of technical background would be required to manufacture on the Saint Regis reservation. Foxrun did not believe that the Saint Regis Tribe would be capable of developing, manufacturing, distributing, and marketing its two patents. Guttenberg went on to explain that Foxrun's position was being articulated to various Senators because it was Foxrun's belief that the kind of structuring that Saint Regis was involved in was damaging all indigenous people. For Shore to characterize this explanation as a threat is disingenuous and in and of itself malicious prosecution. Guttenberg on behalf of Foxrun told Shore's assistant that Foxrun had no interest in doing business with the Saint Regis Tribe or Shore Chan DePumpo, LLP., and simply wanted the replacement or cost of the prototype Chris Evans negligently broke.

20.   The statement, "**My executive assistant Caroline Johnson has reported your threatening phone call to my office in which you implied that you "knew people in Israel" who you could enlist to do physical harm to me and my partners".** as published is libel damaging the reputation and good name of Foxrun.

21.   Shore has libeled Guttenberg causing Foxrun immediate and irreparable damage to its good name and reputation.

22.   Based upon Shore's libelous statement, Foxrun demands damages in the amount of $1,000,000.00.

## AND AS FOR A FOURTH CAUSE OF ACTION

23.  Plaintiff re-alleges the allegations contained in paragraphs 1 through 4, 6 through 8, 10 through 14, and 17 through 21 with the same force and effect as if fully set forth herein.

24.  Shore cannot regulate speech. First, Shore's assistant as an employee of Shore Chan DePumpo, LLP., is clearly conflicted and mischaracterizes the conversation she had with Guttenberg. Specifically, Guttenberg's statement that she was in communication with Senators offering testimony in objection to the use of a Tribe's sovereign immunity to warehouse patents is an exercise of Guttenberg's First Amendment Right of free speech, not a threat. Furthermore, Guttenberg has every right to engage in conversations with whomever she pleases regarding Foxrun's patents. Foxrun supports all indigenous people and believes that to place the patent system that can be traced back to the 1700s when the first patent structure was enacted by the Federal Government as reflected in the United States Constitution at odds with the sovereign rights of indigenous peoples of the United States also guaranteed by the U.S. Constitution can only result in a limitation on sovereignty. Guttenberg's statement that a Republican controlled Senate under current President Donald Trump would only respond to a decision by the United States Supreme Court in favor of the Saint Regis Tribe with an active congress limiting sovereignty is Foxrun's right to an exercise of the First Amendment right of free speech, fair comment, and not a threat.

25.  In response to the phone conversation, Shore published to all of the partners in his firm an email letter, containing disparaging and defaming statements about Guttenberg, President of Foxrun.

26.  Shore published the following disparaging and defaming statement in his email to Guttenberg and his partners. **"Ms. Johnson also informed me of your threats to "go to Teva and tell them everything" and otherwise take actions to disrupt our business and harm our reputation."**

27.  The statement, **"Ms. Johnson also informed me of your threats to "go to Teva and tell them everything" and otherwise take actions to disrupt our business and harm our reputation."** as published is libel damaging the reputation and good name of Foxrun.

28.  Shore, has libel Guttenberg causing Foxrun immediate and irreparable damage to its good name and reputation.

29.  Based upon Shore's libelous statement, Foxrun demands damages in the amount of $1,000,000.00.

### AND AS FOR A FIFTH CAUSE OF ACTION

30. Plaintiff re-alleges the allegations contained in paragraphs 1 through 4, 6 through 8, 10 through 14, 17 through 21, and 24 through 28 with the same force and effect as if fully set forth herein.

31. To threaten Guttenberg for her statement that she expected replacement or payment of the prototype that Chris Evans broke is malicious prosecution. It is not unreasonable for Foxrun to demand either the replacement or payment of a patent prototype broken by a patent attorney. Chris Evans has on numerous occasions, admitted that he broke the prototype. A demand for payment is not a threat of physical harm. A discussion with Senators regarding the transfer of patents in exchange for the defense of sovereign immunity in an IPR action is not a threat of physical harm. A discussion with Teva pharmaceutical company or the generic drug trade industries is not a threat of physical harm. Guttenberg has a witness to the actual conversation with both Shore and Johnson. Shore in contrast relies on the hearsay offered by an employee. Moreover, Guttenberg had filed a report with the FBI.

32. In response to the phone conversation, Shore, published to all of the partners in his firm an email letter, containing dispersing and defaming statements about Guttenberg, President of Foxrun.

33. Shore published the following disparaging and defaming statement in his email to Guttenberg and his partners "**I will personally report your threats to physically harm SCD personnel and attempts at extortion to the Federal Bureau of Investigation and the Dallas Police Department."**

34. The statement, "**I will personally report your threats to physically harm SCD personnel and attempts at extortion to the Federal Bureau of Investigation and the Dallas Police Department."** as published is libel damaging the reputation and good name of Foxrun

35. Shore, has libeled Guttenberg causing Foxrun immediate and irreparable damage to her good name and reputation.

36. Based upon Shore's libelous statement, Foxrun demands damages in the amount of $1,000,000.00.

### AND AS FOR A SIXTH CAUSE OF ACTION

37. Plaintiff re-alleges the allegations contained in paragraphs 1 through 4, 6 through 8, 10 through 14, 17 through 21, 24 through 28, and 31 through 36 with the same force and effect as if fully set forth herein.

38. Guttenberg at the conclusion of her telephone conversation with Johnson stated that she would be reporting the negligent breaking of the prototype and failure to

return it to both the Dallas Police Department and the FBI in the event the device was not returned, replaced, or paid for. This is not a threat. This is legal recourse for Shore Chan DePumpo, LLP. breaking the prototype.

39. In response to the phone conversation, Shore, published to all of the partners in his firm an email letter, containing dispersing and defaming statements about Guttenberg, President of Foxrun.

40. Shore published the following disparaging and defaming statement in his email to Guttenberg and his partners. **"I owe my employees a duty to protect them from you now that you have overtly threatened them."**

41. The statement, **"I owe my employees a duty to protect them from you now that you have overtly threatened them."** as published is libel damaging the reputation and good name of Foxrun.

42. Shore, has libeled Guttenberg causing Foxrun immediate and irreparable damage to its good name and reputation.

43. Based upon Shore's libelous statement, Foxrun demands damages in the amount of $1,000,000.00.

## AND AS FOR A SEVENTH CAUSE OF ACTION

44. Plaintiff re-alleges the allegations contained in paragraphs 1 through 4, 6 through 8, 10 through 14, 17 through 21, 24 through 28, 31 through 36, and 38 through 42 with the same force and effect as if fully set forth herein.

45. In response to the phone conversation, Shore, published to all of the partners in his firm an email letter, containing dispersing and defaming statements about Guttenberg, President of Foxrun.

46. Shore published the following disparaging and defaming statement in his email to Guttenberg and his partners. **"I personally and my firm mean you no harm, but we will not allow you (or any other person) to make threats against our staff or any other persons associated with us."**

47. The statement, **"I personally and my firm mean you no harm, but we will not allow you (or any other person) to make threats against our staff or any other persons associated with us."** as published is libel damaging the reputation and good name of Foxrun.

48. Shore, has libeled Guttenberg causing Foxrun immediate and irreparable damage to its good name and reputation.

49. Based upon Shore's libelous statement, Foxrun demands damages in the amount of $1,000,000.00.

## AND AS FOR A EIGHTH CAUSE OF ACTION

50. Plaintiff re-alleges the allegations contained in paragraphs 1 through 4, 6 through 8, 10 through 14, 17 through 21, 24 through 28, 31 through 36, 38 through 42, and 45 through 48 with the same force and effect as if fully set forth herein.

51. In response to the phone conversation, Shore, published to all of the partners in his firm an email letter, containing dispersing and defaming statements about Guttenberg, President of Foxrun.

52. Shore published the following disparaging and defaming statement in his email to Guttenberg and his partners. **"statement I understand that you have also made threats on phone calls with Chris Evans against Russell Barr and the St. Regis Mohawk Tribe in general."**

53. The statement, **"statement I understand that you have also made threats on phone calls with Chris Evans against Russell Barr and the St. Regis Mohawk Tribe in general."** as published is libel damaging the reputation and good name of Foxrun.

54. Shore, has libeled Guttenberg causing Foxrun immediate and irreparable damage to its good name and reputation.

55. Based upon Shore's libelous statement, Foxrun demands damages in the amount of $1,000,000.00.

**WHEREFORE, the Plaintiff Foxrun Development Co. LLC. and Nancy Guttenberg demands judgment against the Defendant as follows:**

1.  On the First Cause of Action, $400,000.00 together with interest thereon from November 6th 2017, plus plaintiff's costs and disbursements, including reasonable counsel fees.

2.  On the Second Cause of Action, $1,000,000.00 together with interest thereon from November 6th 2017, plus plaintiff's costs and disbursements, including reasonable counsel fees.

3.  On the Third Cause of Action, $1,000,000.00 together with interest thereon from November 6th 2017, plus plaintiff's costs and disbursements, including reasonable counsel fees.

4.  On the Fourth Cause of Action, $1,000,000.00 together with interest thereon from November 6th 2017, plus plaintiff's costs and disbursements, including reasonable counsel fees.

5.  On the Fifth Cause of Action, $1,000,000.00 together with interest thereon from November 6th 2017, plus plaintiff's costs and disbursements, including reasonable counsel fees.

6.  On the Sixth Cause of Action, $1,000,000.00 together with interest thereon from November 6th 2017, plus plaintiff's costs and disbursements, including reasonable counsel fees.

7.  On the Seventh Cause of Action, $1,000,000.00 together with interest thereon from November 6th 2017, plus plaintiff's costs and disbursements, including reasonable counsel fees.

8.  On the Eighth Cause of Action, $1,000,000.00 together with interest thereon from November 6th 2017, plus plaintiff's costs and disbursements, including reasonable counsel fees.

9.  On all Eight causes of action, such other and further relief as the Court deems just and proper.

*Dated: November 6th, 2017 Westchester, New York*

*Nancy Guttenberg*
*Nancy Ferguson Guttenberg Esq.*
*Attorney for Plaintiff:NF5122*
*399 Hawley Road*
*North Salem, New York 10560*
*(518) 536-0292*
*Guttenbergnancy1994@gmail.com*

*Mitchell S. Kessler*
*Mitchell S. Kessler*
*ID Number: MK8269*
*Mitch Kessler, Attorney at Law*
*63 Pike Creek Drive*
*Cohoes, NY 12047*
*(518) 235-6312*
upphetsade@aol.com